Joel E. Elkins (SBN 256020)
Email: jelkins@weisslawllp.com
**WEISSLAW LLP**
9107 Wilshire Blvd, Suite 450
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile: 310/209-2348

*Attorneys for Plaintiff*

*[Additional Counsel on Signature Page]*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL PARSHALL, On Behalf of Himself and All Others Similarly Situated, | Case No. _____ |
| Plaintiff, | CLASS ACTION |
| v. | **COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934** |
| HERITAGE OAKS BANCORP, SIMONE LAGOMARSINO, MICHAEL J. MORRIS, ALEXANDER F. SIMAS, DANIEL J. O'HARE, DEE LACEY, JAMES J. LYNCH, MARK C. FUGATE, MICHAEL J. BEHRMAN, MICHAEL E. PFAU, HOWARD N. GOULD, STEPHEN P. YOST, and PACIFIC PREMIER BANCORP, INC., | JURY TRIAL DEMANDED |
| Defendants. | |

Plaintiff, by and through his attorneys, alleges upon personal knowledge as to himself, and upon information and belief based upon, among other things, the investigation of counsel as to all other allegations herein, as follows:

## SUMMARY OF THE ACTION

1.      This is a class action brought on behalf of the public stockholders of Heritage Oaks Bancorp ("Heritage" or the "Company") against Heritage and its Board of Directors (the "Board" or the "Individual Defendants"), to enjoin a proposed transaction announced on December 13, 2016 (the "Proposed Transaction"), pursuant to which Heritage will be acquired by Pacific Premier Bancorp, Inc. ("Pacific").

2.      On December 12, 2016, the Board caused Heritage to enter into an agreement and plan of merger (the "Merger Agreement").  Pursuant to the terms of the Merger Agreement, stockholders of Heritage will receive 0.3471 shares of Pacific for each share of Heritage they own.

3.      On February 28, 2017, defendants filed a proxy statement (the "Proxy Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4.      The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement, which violations must be remedied prior to the stockholder vote on the Proposed Transaction currently scheduled for March 27, 2017.

COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6.     This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.     Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8.     Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Heritage common stock.

9.     Defendant Heritage is a California corporation and maintains its principal executive offices at 1222 Vine Street, Paso Robles, CA 93446. The Company is the holding company for Heritage Oaks Bank. Heritage's common stock is traded on the NasdaqCM under the ticker symbol "HEOP."

10.    Defendant Simone Lagomarsino ("Lagomarsino") is President and Chief Executive Officer ("CEO") of the Company.

11.    Defendant Michael J. Morris ("Morris") has served as a director of the Company since January 2001 and as Chairman of the Board since May 2007.

12.    Defendant Alexander F. Simas ("Simas") has served as a director of the Company since November 2003.

13.    Defendant Daniel J. O'Hare ("O'Hare") has served as a director of the Company since November 2004.

14.    Defendant Dee Lacey ("Lacey") has served as a director of the Company since January 1997.

15.    Defendant James J. Lynch ("Lynch") has served as a director of the Company since June 2010.

16.    Defendant Mark C. Fugate ("Fugate") has served as a director of the Company since November 2003.

17.    Defendant Michael J. Behrman ("Behrman") has served as a director of the Company since October 2007.

18.    Defendant Michael E. Pfau ("Pfau") has served as a director of the Company since October 2007.

19.    Defendant Howard N. Gould ("Gould") is a director of the Company.

COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

20.     Defendant Stephen P. Yost ("Yost") has served as a director of the Company since March 2014.

21.     The defendants identified in paragraphs 10 through 20 are collectively referred to herein as the "Individual Defendants."

22.     Defendant Pacific is a Delaware corporation with its principal executive offices located at 17901 Von Karman Avenue, Suite 1200, Irvine, CA 92614.

## CLASS ACTION ALLEGATIONS

23.     Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of Heritage (the "Class").  Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

24.     This action is properly maintainable as a class action.

25.     The Class is so numerous that joinder of all members is impracticable. As of December 13, 2016, there were approximately 34,257,331 shares of Heritage common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

26.     Questions of law and fact are common to the Class, including, among others, whether defendants violated the 1934 Act and whether defendants will

irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

27.    Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.  Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class.  Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

28.    The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

29.    Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class.  Therefore, final injunctive relief on behalf of the Class is appropriate.

COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

# SUBSTANTIVE ALLEGATIONS

## A.    Background of the Company and the Proposed Transaction

30.    Heritage acts as a bank holding company of Heritage Oaks Bank (the "Bank").

31.    The Bank offers traditional banking products, such as checking, savings, and certificates of deposit, as well as mortgage loans and commercial and consumer loans to customers who are predominately small to medium-sized businesses and individuals.

32.    On October 27, 2016, Heritage issued a press release wherein it reported its third quarter 2016 financial results.  The Company reported net income available to common shareholders of $4.2 million, or $0.12 per diluted common share, for the third quarter of 2016, compared to net income available to common shareholders of $4.0 million, or $0.12 per diluted common share, for the third quarter of 2015.

33.    Gross loans increased by $136.0 million, or 11.3%, to $1.34 billion at September 30, 2016 compared to $1.21 billion at September 30, 2015, and increased by $9.0 million or 0.7%, compared to $1.33 billion at June 30, 2016. New loan production totaled $113.1 million for the third quarter of 2016, an increase of 3.6% compared to the linked quarter.

COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

34.    Total deposits increased by $59.6 million, or 3.8%, to $1.63 billion at September 30, 2016 compared to $1.57 billion a year earlier, and increased by $24.3 million, or 1.5%, during the third quarter of 2016. Non-interest bearing demand deposits grew by 4.7% during the last year and by 4.3% over the last quarter to $570.2 million.

35.    With respect to the financial results, Individual Defendant Lagomarsino, President and CEO of Heritage, commented:

> Our earnings for the third quarter were supported by an increase in non-interest income attributable to strong levels of customer swap fee income, and mortgage banking revenue, as our customers took advantage of the decline in long-term interest rates. We also continued to grow the deposit and loan portfolios, although loan growth was subdued from the pay-off of two large construction loans due to the early completion of projects, and due to the seasonal decline in agribusiness line utilization. Our loan pipeline remains strong going into the fourth quarter, and we continue to anticipate long-term annual loan growth in the low double digits.

36.    On January 30, 2017, Heritage issued a press release wherein it reported its fourth quarter and year end 2016 financial results. The Company reported net income available to common shareholders of $4.6 million, or $0.13

per diluted common share, for the fourth quarter of 2016 compared to net income available to common shareholders of $3.5 million, or $0.10 per diluted common share, for the fourth quarter of 2015, and net income available to common shareholders of $4.2 million, or $0.12 per diluted common share, for the third quarter of 2016.  For the year ended December 31, 2016, net income available to common shareholders was $16.9 million, or $0.49 per diluted common share, compared to net income available to common shareholders of $15.3 million, or $0.44 per diluted common share for the year ended December 31, 2015.

37.     Gross loans increased by $138.2 million, or 11.1%, to $1.39 billion at December 31, 2016 compared to $1.25 billion a year earlier, and increased by $42.8 million, or 3.2%, compared to $1.34 billion at September 30, 2016.  New loan production totaled $124.8 million for the fourth quarter of 2016, an increase of 10.3% compared to the linked quarter.

38.     Total deposits increased by $118.9 million, or 7.6%, to $1.68 billion at December 31, 2016 compared to $1.56 billion a year earlier, and increased by $52.5 million, or 3.2%, during the fourth quarter of 2016.  Non-interest bearing demand deposits grew by 11.5% during the last year and by 0.7% over the last quarter to $574.0 million.

39.     With respect to the financial results, Individual Defendant Lagomarsino commented:

2016 marked a year of multiple successes for the Company, which should provide many long-term benefits for its shareholders, customers, and employees[.] We achieved double-digit growth in loans and non-interest bearing demand deposits during 2016, and we also introduced our new interest rate swap product, which generated over $1.2 million in fee income.

40.   Nevertheless, the Board caused the Company to enter into the Merger Agreement, pursuant to which the Company will be acquired for inadequate consideration.

41.   Pursuant to the terms of the Merger Agreement, Heritage stockholders will receive 0.3471 shares of Pacific common stock for each share of Heritage common stock they own. Based on the closing price of Pacific's common stock on December 12, 2016, the merger consideration is valued at $11.68 per share. Following the consummation of the merger, Pacific stockholders will own approximately 69.9% of the outstanding shares of the combined company, and Heritage stockholders will own only approximately 30.1%.

42.   To the detriment of the Company's stockholders, the terms of the Merger Agreement substantially favor Pacific and are calculated to unreasonably dissuade potential suitors from making competing offers.

43.   The Individual Defendants have all but ensured that another entity will not emerge with a competing proposal by agreeing to a "no solicitation" provision in the Merger Agreement that prohibits the Individual Defendants from soliciting alternative proposals and severely constrains their ability to communicate and negotiate with potential buyers who wish to submit or have submitted unsolicited alternative proposals.  Section 6.07(a) of the Merger Agreement states, in relevant part:

(a) HEOP agrees that it shall, and shall direct and use its reasonable best efforts to cause its affiliates, directors, officers, employees, agents and representatives (including, without limitation, any investment banker, financial advisor, attorney, accountant or other representative retained by it) (all of the foregoing, collectively, "Representatives") to, immediately cease any discussions or negotiations with any other parties that may be ongoing with respect to the possibility or consideration of any Acquisition Proposal, and will use its reasonable best efforts to enforce any confidentiality or similar agreement relating to any Acquisition Proposal, including by requesting the other party to promptly return or destroy any confidential information previously furnished by or on behalf of HEOP or any of its Subsidiaries thereunder and by specifically

enforcing the terms thereof in a court of competent jurisdiction. From the date of this Agreement through the Effective Time, neither HEOP nor any of its Subsidiaries shall, and shall cause their respective directors, officers or employees or any Representative retained by them not to, directly or indirectly through another Person, (i) solicit, initiate or encourage (including by way of furnishing information or assistance), or take any other action designed to facilitate or that is likely to result in, any inquiries or the making of any proposal or offer that constitutes, or is reasonably likely to lead to, any Acquisition Proposal, (ii) provide any confidential information or data to any Person relating to any Acquisition Proposal, (iii) participate in any discussions or negotiations regarding any Acquisition Proposal, (iv) waive, terminate, modify or fail to enforce any provision of any contractual "standstill" or similar obligations of any Person other than PPBI or its Affiliates, (v) approve or recommend, propose to approve or recommend, or execute or enter into, any letter of intent, agreement in principle, merger agreement, asset purchase agreement or share exchange agreement, option agreement or other similar agreement related to any Acquisition Proposal or propose to do any of the foregoing, or (vi) make or authorize any statement, recommendation

COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

or solicitation in support of any Acquisition Proposal; provided, however, that prior to the date of the HEOP Meeting, if the HEOP Board determines in good faith, after consulting with its outside legal and financial advisors, that the failure to do so would breach, or would reasonably be expected to result in a breach of, the HEOP Board's fiduciary duties under applicable law,

44.   Further, the Company must promptly advise Pacific of any proposals or inquiries received from other parties.  Section 6.07(b) of the Merger Agreement states:

(b) In addition to the obligations of HEOP set forth in Section 6.07(a), HEOP shall promptly (within 24 hours) advise PPBI orally and in writing of its receipt of any Acquisition Proposal and keep PPBI reasonably informed, on a current basis, of the continuing status thereof, including the material terms and conditions thereof and any material changes thereto, and shall contemporaneously provide to PPBI all materials provided to or made available to any third party pursuant to this Section 6.07 which were not previously provided to PPBI.

45.   Moreover, the Merger Agreement contains a highly restrictive "fiduciary out" provision permitting the Board to withdraw its approval of the

COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Proposed Transaction under extremely limited circumstances, and grants Pacific a

"matching right" with respect to any "Superior Proposal" made to the Company.

Sections 6.02(b) of the Merger Agreement provides:

> (b) Notwithstanding the foregoing, HEOP and the HEOP Board shall
>
> be permitted to effect a Change in Recommendation if and only to the
>
> extent that:
>
> (i) HEOP shall have complied in all material respects with Section
>
> 6.07;
>
> (ii) the HEOP Board, after consulting with its outside counsel and
>
> financial advisor, shall have determined in good faith that failure to do
>
> so would result in a breach of its fiduciary duties under applicable
>
> law; and
>
> (iii) if the HEOP Board intends to effect a Change in
>
> Recommendation following receipt of an Acquisition Proposal, (A)
>
> the HEOP Board shall have concluded in good faith, after giving
>
> effect to all of the adjustments which may be offered by PPBI
>
> pursuant to clause (C) below, that such Acquisition Proposal
>
> constitutes a Superior Proposal, (B) HEOP shall notify PPBI, at least
>
> five Business Days in advance, of its intention to effect a Change in
>
> Recommendation in response to such Superior Proposal (including the

identity of the party making such Acquisition Proposal) and furnish to PPBI all the material terms and conditions of such proposal , and (C) prior to effecting such a Change in Recommendation, HEOP shall, and shall cause its financial and legal advisors to, during the period following HEOP's delivery of the notice referred to in clause (B) above, negotiate with PPBI in good faith for a period of up to five Business Days (to the extent PPBI desires to negotiate) to make such adjustments in the terms and conditions of this Agreement so that such Acquisition Proposal ceases to constitute a Superior Proposal.

46.     Further locking up control of the Company in favor of Pacific, the Merger Agreement provides for a "termination fee" of $15 million, payable by the Company to Pacific if the Individual Defendants cause the Company to terminate the Merger Agreement.

47.     By agreeing to the deal protection devices, the Individual Defendants have locked up the Proposed Transaction and have precluded other bidders from making successful competing offers for the Company.

48.     Additionally, the Company's officers and directors have entered into agreements with Pacific, pursuant to which they will vote their Company shares in favor of the Proposed Transaction.  As a result, approximately 30.73% of the Company's stock is already locked up in favor of the Proposed Transaction.

COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

49.     The consideration to be provided to plaintiff and the Class in the Proposed Transaction is unfair and inadequate because, among other things, the intrinsic value of the Company is materially in excess of the amount offered in the Proposed Transaction.

50.     Accordingly, the Proposed Transaction will deny Class members their right to share proportionately and equitably in the true value of the Company's valuable and profitable business, and future growth in profits and earnings.

51.     Meanwhile, certain of the Company's officers and directors stand to receive substantial benefits as a result of the Proposed Transaction.

52.     For example, Individual Defendants Lagomarsino, Morris, and Pfau will serve as directors of Pacific and its wholly-owned subsidiary, Pacific Premier Bank ("Pacific Premier"), following the close of the Proposed Transaction.

53.     Additionally, according to the press release announcing the Proposed Transaction, Pacific "plans to retain . . . key members of the Heritage Oaks leadership team."   For example, Rob Osterbauer, Chief Agriculture and Commercial Officer, and Brooks Wise, Executive Vice President & Commercial Banking Division Manager, will each be employed as an Executive Vice President, Market President, of Pacific Premier following the merger.

COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

54.     Further, Pacific Premier will establish a Community Advisory Board for the Central Coast Region, which shall be comprised of all members of the Heritage Board as of the closing of the merger.

55.     Moreover, Individual Defendant Lagomarsino stands to receive $4,374,204 in connection with the Proposed Transaction.

***The Proxy Statement Omits Material Information, Rendering It False and Misleading***

56.     Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction.

57.     The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.

58.     First, the Proxy Statement omits material information regarding the Company's financial projections, Pacific's financial projections, and the financial analysis performed by the Company's financial advisor, Sandler O'Neill & Partners, L.P. ("Sandler"), in support of its so-called fairness opinion.

59.     Notably, the Proxy Statement fails to disclose certain financial information forecasted for Heritage used by Sandler in connection with the analyses underlying its fairness opinion.  Specifically, the Proxy Statement fails to disclose estimates regarding the Company's earnings per share and tangible book value through 2020 as used in connection with Sandler's *Net Present Value Analysis*.

COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

60.     Similarly, the Proxy Statement fails to disclose Pacific's financial projections, which are particularly material here, as the merger consideration is Pacific common stock.  Notably, the Proxy Statement similarly fails to disclose certain financial information forecasted for Pacific used by Sandler in connection with the analyses underlying its fairness opinion.   Specifically, the Proxy Statement fails to disclose estimates regarding the Pacific's earnings per share and tangible book value through 2020 as used in connection with Sandler's *Net Present Value Analysis* for Pacific.

61.     With respect to Sandler's *Net Present Value Analysis* for Heritage, the Proxy Statement also fails to disclose:  (i) the dividend and other assumptions provided by Heritage senior management; (ii) the projected value of a Heritage common stock at December 31, 2020; (iii) Sandler's bases for applying price to 2020 earnings per share multiples ranging from 15.0x to 20.0x, price to December 31, 2020 tangible book value per share multiples ranging from 120% to 220%, and discount rates ranging from 7.0% to 13.0%; and (iv) the assumptions regarding required rates of return of holders or prospective buyers of Heritage common stock.

62.     With respect to Sandler's *Net Present Value Analysis* for Pacific, the Proxy Statement fails to disclose:  (i) the dividend and other assumptions provided by Pacific senior management; (ii) the projected value of Pacific common stock at

December 31, 2020; (iii) Sandler's bases for applying price to 2020 earnings per share multiples ranging from 14.0x to 22.0x, price to December 31, 2020 tangible book value per share multiples ranging from 160% to 260%, and discount rates ranging from 7.0% to 13.0%; and (iv) the assumptions regarding required rates of return of holders or prospective buyers of Pacific common stock.

63.     With respect to Sandler's *Pro Forma Merger Analysis*, the Proxy Statement fails to disclose the dividend and other assumptions as provided by the respective senior managements of Heritage and Pacific.

64.     With respect to Sandler's *Comparable Company Analyses*, the Proxy Statement fails to disclose the individual multiples and financial metrics for the companies observed by Sandler in its analyses.

65.     With respect to Sandler's *Analysis of Selected Merger Transactions*, the Proxy Statement fails to disclose the individual multiples and financial metrics for the transactions observed by Sandler in its analysis.

66.     The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion. Moreover, when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key

COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

67.    The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement:  (i) "Background of the Merger"; (ii) "HEOP's Reasons for the Merger and Recommendation of the HEOP Board of Directors"; (iii) "Opinion of HEOP's Financial Advisor"; and (iv) "Opinion of Pacific Premier's Financial Advisor."

68.    Second, the Proxy Statement omits material information regarding potential conflicts of interest of the Company's officers and directors.

69.    Following the close of the Proposed Transaction, Pacific "plans to retain . . . key members of the Heritage Oaks leadership team"; Lagomarsino, Morris, and Pfau will serve as directors of Pacific and Pacific Premier; and the Individual Defendants will serve on a Pacific Community Advisory Board. However, the Proxy Statement fails to disclose the timing and nature of all communications regarding future employment, directorship, and advisory board membership of Heritage's officers and directors, including who participated in all such communications.

70.    Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.  This information is necessary for stockholders to understand potential conflicts of

interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

71.     The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement:  (i) "Interests of Certain HEOP Officers and Directors in the Merger"; (ii) "Background of the Merger"; and (iii) "HEOP's Reasons for the Merger and Recommendation of the HEOP Board of Directors."

72.     Third, the Proxy Statement omits material information regarding potential conflicts of interest of Sandler.

73.     Specifically, the Proxy Statement fails to disclose the percentage of Sandler's fee that is contingent upon consummation of the Proposed Transaction, as well as Sandler's interests in the debit and equity securities of Heritage and Pacific.

74.     Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

75.     The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement:  (i) "Background of the Merger"; (ii) "HEOP's Reasons for the Merger

and Recommendation of the HEOP Board of Directors"; and (iii) "Opinion of HEOP's Financial Advisor."

76.     Fourth, the Proxy Statement fails to disclose whether any of the non-disclosure agreements executed between the Company and potential bidders contained standstill and/or "don't ask, don't waive" provisions that were or are preventing those counterparties from submitting superior offers to acquire the Company.

77.     Without this information, stockholders may have the mistaken belief that, if these potentially interested parties wished to come forward with a superior offer, they are permitted to do so, when in fact they are contractually prohibited from doing so.

78.     The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement:  (i) "Background of the Merger"; and (ii) "HEOP's Reasons for the Merger and Recommendation of the HEOP Board of Directors."

79.     Fifth, the Proxy Statement omits material information regarding the background of the Proposed Transaction.  The Company's stockholders are entitled to an accurate description of the "process" the directors used in coming to their decision to support the Proposed Transaction.

80.     For example, the Proxy Statement fails to disclose the nature of the issue discovered by Pacific during its due diligence process, which prompted the Company to engage an outside consultant.

81.     The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement:  (i) "Background of the Merger"; and (ii) "HEOP's Reasons for the Merger and Recommendation of the HEOP Board of Directors."

82.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Heritage's stockholders.

## COUNT I
### Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Heritage

83.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

84.     The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading.  Heritage is liable as the issuer of these statements.

85.     The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the

Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

86.     The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

87.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.  In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

88.     The Proxy Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

89.     By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

90.     Because of the false and misleading statements in the Proxy Statement, plaintiff and the Class are threatened with irreparable harm.

COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

## COUNT II
### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants and Pacific

91.   Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

92.   The Individual Defendants and Pacific acted as controlling persons of Heritage within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of Heritage and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

93.   Each of the Individual Defendants and Pacific was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

94.   In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.

The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly in the making of the Proxy Statement.

95.    Pacific also had direct supervisory control over the composition of the Proxy Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Proxy Statement.

96.    By virtue of the foregoing, the Individual Defendants and Pacific violated Section 20(a) of the 1934 Act.

97.    As set forth above, the Individual Defendants and Pacific had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## **PRAYER FOR RELIEF**

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A.    Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.    In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.    Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.    Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.    Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F.    Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated:  March 10, 2017                          **WEISSLAW LLP**

By: _____
Joel E. Elkins (SBN 256020)
9107 Wilshire Blvd, Suite 450
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile: 310/209-2348
Email: jelkins@weisslawllp.com

*Attorneys for Plaintiff*

COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

**OF COUNSEL:**

**RIGRODSKY & LONG, P.A.**
Brian D. Long (to be admitted *pro hac vice*)
Gina M. Serra (to be admitted *pro hac vice*)
2 Righter Parkway, Suite 120
Wilmington, DE 19803
(302) 295-5310

**RM LAW, P.C.**
1055 Westlakes Drive, Suite 3112
Berwyn, PA 19312
(484) 324-6800

28
COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934